IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN RICHARD JAE,

    Plaintiff,

vs.

WEXFORD HEALTH SERVICES, INC.,

    Defendant.

ORIGINAL CIVIL NO. 1: CV-00-1534

U.S. District Judge Rambo
Magistrate Judge Smyser

REPLY BRIEF IN OPPOSITION
DEFENDANT'S MOTION TO
REVOKE PLAINTIFF'S IN FORMA
PAUPERIS STATUS

FILED BY: MR. JOHN RICHARD
Plaintiff and Pro Se

FILED
HARRISBURG, PA

MAR 3 0 2001

MARY E. D'ANDREA, CLERK
Per _____ Deputy Clerk

MR. JOHN RICHARD JAE
#BQ-3219
SCI-Greene/SMU
175 Progress Drive
Waynesburg, PA 15370-8089

# I. STATEMENT OF THE CASE

On or about August 28, 2000, John Richard Tye, a Pro Se State Prisoner confined in the Restricted Housing Unit at the State Correctional Institution at Camp Hill ("SCI-Camp Hill") Camp Hill, Pennsylvania, initiated this Civil Rights Action by filing a complaint pursuant 42 U.S.C. §1983 against Defendant, Wexford Health Services, Inc., arising out of the deliberate indifference to Plaintiff's serious medical needs resulting from the defendant's failure to repair/replace the Plaintiff's prescription eyeglasses which had been broken back in December/April, 2000. Plaintiff's complaint sought, as relief, compensatory and punitive damages, a Declaratory Judgment, Plaintiff's Court Costs, Filing Fees, U.S. Marshal Service Fees, Plaintiff's Attorney's Fees & Costs (if any), a Trial by Jury and such other and further relief as this Court Deems is Just, Proper & Equitable, Herein, and Plaintiff also filed an Application, seeking leave of Court, to proceed in forma pauperis.

In his Application for Leave To Proceed in Forma Pauperis, Plaintiff alleged that he was under imminent danger of serious physical injury:

"Because of the strain and wear and tear on and the deteriating of my eye vision/eyes, which is shown by the blurred vision, headaches, eye pain I am experiencing now and have experienced for the past here and what could amount to irreversible damage on my eyes/vision direct result of defendant's illegal refusal to have my eye glasses and I could go blind from such." [1]

By order dated September 8, 2000, this Court granted Plaintiff's to proceed in forma pauperis, herein this case.

On or about November 13, 2000, Defendant, by Counsel, filed Motion to Revoke Plaintiff's In Forma Pauperis Status, herein this case.

On November 28, 2000, Defendants, by Counsel, filed their Brief in Support

On or about ___ who filed an extension of time until January

to file a brief in opposition to Defendants' Motion to Revoke Plaintiff's In Forma Pauperis Status and a Brief in Opposition to Defendant's Motion to Dismiss Plaintiff's Complaint.

On or about January 25, 2001, Plaintiff filed his Second Motion For Enlargement of Time, herein this case, requesting a second enlargement of time until March 25, 2001, in which to file his Reply brief in opposition to the above-referred to Defendant's Motions, which U.S. Magistrate Judge J. Andrew Smyser, of this Court, denied on February 2, 2001.

Plaintiff, on or about February 11, 2001, Plaintiff appealed to U.S. District Judge from the illegal February 2, 2001, Order of U.S. Magistrate Judge, denying, Plaintiff's Second Motion For Enlargement of Time, and on February 26, 2001, U.S. District Judge Rambo Court, entered an Order, reversing the Magistrate Judge's order of February 2, 2001, and granting Plaintiff leave until March 25, 2001, to file his Opposition Briefs and, ordering, that no further extensions will be granted under any circumstances, that the order of the magistrate Judge, dated February 12, 2001, is vacated [2]/ pending the filing by Plaintiff of his opposition brief and further consideration by the magistrate Judge; the magistrate Judge shall reinstate his order of February 12, 2001, if Plaintiff fails to file a timely brief, and the captioned action is to Magistrate Judge Smyser.

This is the Plaintiff's Reply Brief in Opposition to Defendant's to Revoke Plaintiff's In Forma Pauperis Status, herein this case.

II. STATEMENT OF THE FACTS

Sometime around the end of April, 2000, Plaintiff John Richa who has worn eyeglasses since he was 21 months old, broke his pair issued eyeglasses here.

Around the first or second week of May, 2000, Plaintiff one turned his eyeglasses into the Prison Corrections Health Care Administrator Ms.

along with an Inmate Request to Staff Member Form, requesting she send such eyeglasses out to be repaired.

On June 4, 2000, Plaintiff Jae wrote & sent an Inmate Request to Ms. Law, advising her that I had not yet received my eyeglasses back here yet, that I was being temporarily transferred to the [SAU] at SCI-Waymart for a mental health evaluation on June 6, 2000, would she please check & see why my glasses had not been returned to me, & then when they get here, to please send such to me at SCI-Waymart.

On June 6, 2000, Plaintiff Jae was transferred to the SAU at SCI-Waymart.

On June 19, 2000, Plaintiff was temporarily returned back to [SCI-]Camp Hill from the SAU at SCI-Waymart for a federal court hearing.

That on June 22, 2000, because he still had not received his eyeglasses back yet, he again wrote and sent another Inmate Request Form to Ms. Law and one to Defendant Wexford Health Services, Inc., here at [SCI-Camp Hill], complaining about such.

On June 23, 2000, Plaintiff Jae was returned to the SAU at SCI-Waymart.

On July 18, 2000, Plaintiff Jae was permanently transferred back to [SCI-Camp] Hill from the SAU at Waymart.

On July 20, 2000, Plaintiff Jae was seen at sick call here by Colleen Newfield, and one of the medical problems he complained [of was] the blurred vision, headaches & eye pain that he was experiencing [from not] having his eyeglasses to wear.

On or about July 27, 2000, Plaintiff Jae was again seen here at [sick call] by P.A. Todd (1st name not known) & one of the medical problems complained about was the blurred vision, headaches and eye pain [he was] experiencing from not having his eyeglasses to wear.

On or about August 2, 2000, Plaintiff Jae was again seen here at sick call by [...] the medical problems he complained about was the blurred vision, headaches [...]

...That, on August 16, 2000, Plaintiff Jae was again seen [also] by Chief P.A. Colleen Newffeld and that one of the medical conditions/[problems] he complained about was the headaches, blurred vision & eye pain th[at] was experiencing due to not having his eyeglasses to wea[r].

On August 16, 2000, Chief P.A. Newffeld verbally informed Plaint[iff] that she had investigated the matter of his eyeglasses & was T[old] that Defendant Wexford Health Services, Inc., had refused to send the Plain[tiff's] eyeglasses out to be repaired, unless the Plaintiff could pay for su[ch] as there was written documentation on Plaintiff's medical chart that during the[se] years, Plaintiff has received seven (7) pairs of replacement eyeglas[ses].

That, Plaintiff Jae has "not" received seven (7) pairs of replacement eyegla[sses] within the past 18 months/1½ years, but only two pair and one of these was ordered by the eye doctor here due to a change in Plaintiff Jae's Ey[e] prescription & thus such "IS" a blatant & bold face "lie"! If such is documente[d on] medical chart here, then some Nurse or Medical Personnel delibe[rately] fraudently placed/wrote such information/"lie" on my prison medical c[hart] falsely and such is suspect and specious.

From July 25, 2000, through August 15, 2000, Plaintiff Jae also complained on numerous occasions to numerous different nurses [about] the headaches, blurred vision & eye pain which he was experiencing [due to not] having his eyeglasses to wear.

That, this is not the first time that Defendant Wexford Health [Services] has refused to have Plaintiff Jae's eyeglasses repaired beca[use] no money on his prison account to pay for such repairs as the Defen[dant did] this last year too for over four months here & Defendant We[xford Health] Services, Inc., issued herein for refusing to have Plaintiff's e[yeglasses] repaired for over four months back then last year here also.

That, the Prison & its Health Care Contractor are legally obliga[ted to] & pay for Medical Care & Treatment for its Prisoners, including, but not l[imited to]

## III. ARGUMENT

### A. PLAINTIFFS IN FORMA PAUPERIS STATUS SHOULD NOT BE REVOKED BECAUSE MORE THAN ~~MORE THAN~~ THREE OF HIS COMPLAINTS HAVE BEEN DEEMED FRIVOLOUS, MALICIOUS OR FAILED TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

Defendant relies upon and cites a case from the United States Court of Appeals for the Eighth Circuit, in which it was stated:

"the Act does not close the Courthouse doors to prisoners who frequently file frivolous lawsuits, rather, it merely makes them pay the full ordinary filing fees sooner rather than later." <u>Ashley v. Dilworth</u>, 147 F.3d 715 (8th Cir. 1998).

By reply to such, the Plaintiff avers & submits, that, however the Court was wrong in <u>Ashley</u>, as, if a Pro Se Plaintiff has no money at all in which to pay the full ordinary filing fee up all at once, than the Act most certainly "<u>does</u>" close the the Courthouse doors to indigent Pro Se plaintiffs-prisoners if it makes them pay the full ordinary filing fees sooner or up all at once rather than later, because such causes the D. Courts to dismiss the Pro Se Prisoner Plaintiff's civil rts and deny him access to the Federal Courts when he is unable to pay such filing fee upfront all at once & when it cause the Courts to violate their sworn duty to hear federal claims. <u>Ayers v. Norris</u>, 43 F.Supp.2d 1039 (E.D. Ark. 1999).

Next Defendant claims and argues, that:

"In this case, Plaintiff is a frequent-filer of frivolous claims."

However, by reply to such, the Plaintiff avers & submits, to the he is "not" a frequent-filer of frivolous claims, but rather, he is of a rights-law violating court system which "has" violated his

~~Defendant also claims, that:~~
~~Plaintiff's ca~~

B. PLAINTIFF WAS UNDER IMMINENT DANGER OF SERIOUS PHYSICAL INJURY BOTH AT THE TIME OF THE INCIDENT GIVING RISE TO THIS COMPLAINT AND AT THE TIME OF THE FILING OF THE COMPLAINT IN THIS CASE AND THUS, HE "DOES" MEET EXCEPTION TO THE THREE STRIKES PROVISION.

In <u>Gibbs v. Roman</u>, 116 F.3d 83 (3d Cir. 1997), our Third Circuit, U.S. Court of Appeals, stated & held:

In resolving a contested issue of imminent danger, the district court may rely upon evidence supported by sworn affidavits or depositions, or alternately may hold a hearing. (Gibbs, 116 F.3d at 87).

However, here in this instant case, the defendant has not a evidence by neither sworn nor unsworn affidavits or depositions, thus, it "has" violated the above-holding of the Third Circuit in <u>Gibbs</u>, and, as a consequence, this court may <u>not</u>, by consider Defendant's Exhibit A <u>nor</u> Exhibit-B in its Doc. in support of motion to Revoke Plaintiff's In Forma Pauperis Status, herein.

Also, in <u>Gibbs v. Roman</u>, 116 F.3d 83 (3d Cir. 1997), our Third Court of Appeals, stated & held:

We emphasize that the proper focus when examining an inmate's complaint filed pursuant to 28 U.S.C. §1915(g) must be the imminent danger faced by the inmate at the time of the alleged incident and not at the time the complaint was filed. (Gibbs, 116 F.3d at 86-87).

<u>Gibbs v. Roman</u> was the controlling/state of the law at time of incident alleged in the complaint <u>and also of the</u> the filing of the complaint, herein this case, & thus, Pl. under the Third Circuit's <u>Gibbs</u> holding(s), as above-ta this court must examine & decide the present issue of

Defendant claims, that:

Plaintiff's complaint does not allege any facts establishing that he is in imminent danger of serious physical harm.

By reply to this, the Plaintiff avers & submits that, is true, by law it is not the Plaintiff's complaint which allege any facts establishing that he is in imminent danger of serious physical injury/harm, but rather, it is Plaintiff's Application For Leave To Proceed In Forma Pauperis which allege such facts establishing that he is under imminent of serious physical injury/harm & herein this instant Plaintiff's Application For Leave To Proceed In Forma Pauperis "<u>does</u>" allege facts establishing that he was in imminent of serious physical injury both at the time of the incident alleged in the complaint and also at the time the complaint filed and thus, Defendant's claim here is not only factually frivolous & untrue, but such is also contrary to the controlling

Defendant also claim & argues, that:

In this case, Plaintiff's complaint arises out of the fact that the inmate's prescription lenses were not replaced. It strains credulity to suggest that the failure to replace Plaintiff's eyeglasses placed him in imminent danger of serious physical harm. Consequently, this Honorable Court must revoke Plaintiff's in forma pauperis status as a matter of law.

However, by reply to this, the Plaintiff avers & submits Defendant fails to allege & state how it strains credulity suggest that the failure to replace Plaintiff's eyeglass Plaintiff in imminent danger of serious physical harm, or facts alleged as the reason why Plaintiff was under imminent serious physical injury, herein this case, which Defendant

Furthermore, Plaintiff Rivers submits, that the Defendant's claim/argument here is also factually & legally insufficient, specious & frivolous, because the U.S. Court of Appeals for the Third Circuit, stated & held, in Gibbs v. Cross, 160 F.3d 962 (3d Cir. 1998), that:

> Inmates ought to be able to complain about "unsafe, life-threatening condition[s] in their prison" without waiting for something to happen to them. (Gibbs, 160 F.3d at 965);

> \* \* \* \* \* \*

> Thus, we will not read the language of §1915(g) to require that the "imminent danger" allegation be accompanied by allegations of an existing serious physical injury in order to bring a prisoner within the statutory exception to the "three strikes" provision. It is sufficient that the condition poses an imminent danger of serious physical injury. (Gibbs, 160 F.3d at 967);

and thus herein this instant civil rights action, this Plaintiff should not have to wait until he suffers so much strain and damage to the eyes from having to go without his eyeglasses which becomes irreversible and he loses his vision as a result before he can file a lawsuit/or file a complaint against the Defendant, for illegally denying him his eyeglasses/eye care. And notably absent from Defendant's is any citations of authorities supporting its argument here & that's because there isn't. Finally, if it is anything in this case which strains credulity, as it violates the law, it "IS" Defendants' claims & arguments of their motion to revoke Plaintiff's In Forma Pauperis Status and Brief in Support thereof.

(W) HEREFORE, Plaintiff John Richard Jae, Prays that this court will follow & enforce the controlling Federal Law as it "IS" required to do and Enter an Order denying, with prejudice, Defendant's Motion To Revoke Plaintiff's In Forma Pauperis Status, herein this case

AND HE SHALL EVER PR
RESPECTFULLY SUBMITTE

(s) ___John Richard Jae___
MR. JOHN RICHARD JA
#BQ-3219
SCI-Greene/SMU
175 Progress Drive
Waynesburg, PA. 15370-

Plaintiff and Pro Se Couns

Dated: 23rd MARCH 2001:

Joe vs. Wexford Health Services, Inc.,
Civil No. 1:CV-00-1534

## CERTIFICATE OF SERVICE

I certify that on: 3/23/01, I mailed to the person/[s] below, a true & correct carbon copy of each of the Plaintiff's Reply Brief In Opposition To Defendant's Motion To Revoke Plaintiff's In Forma Pauperis Status and Reply Brief In Opposition To Defendant's Motion To Dismiss Plaintiff's Complaint, by U.S. 1st Class Mail, Postage Prepaid:

I certify that on: 3/23/01, I gave to Prison Officials here, originals of each of the above-same documents for mailing to this [court].

I certify under penalty of perjury & pursuant to 28 U.S.C. §1746, [that the] above, is true & correct:

Mr. James D. Young, Esquire
LAVERY, FAHERTY, YOUNG & PATTERSON, P.C.
Attorneys At Law
P.O. Box 1245
Harrisburg, PA. 17108-1245

(s) Mr. John Richards
Plaintiff and Pro Se [...]

Dated/Executed On:
23rd MARCH 2001: